```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                                  )
MARC FLAGG,                       )
                                  )
                  Plaintiff,      )
                                  )
         v.                       )   CIVIL ACTION
                                  )   NO. 10-10984-WGY
ALI-MED, INC.,                    )
                                  )
                  Defendant.      )
                                  )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                              July 30, 2010

## I.   INTRODUCTION

This case arises out of an alleged wrongful termination of an employee for the purpose of denying family medical benefits to the employee's seriously ill wife. The employee alleges five counts of state statutory or state common law claims against the employer. Originally commenced in the Superior Court of the Commonwealth of Massachusetts sitting in and for the County of Norfolk, the case was removed to this Court on the basis of federal question jurisdiction. The issue here is whether the case should be remanded to state court for lack of removal jurisdiction.

**II.   BACKGROUND**

   A.   Facts

   The plaintiff Marc Flagg ("Flagg") is a Massachusetts resident.  Notice of Removal Ex. B ("Am. Compl.") ¶ 1, ECF No. 1.  Ali-Med, Inc. ("Ali-Med") has its principal place of business in Massachusetts.  Id. ¶ 2.  Flagg was an employee of Ali-Med.  His employment agreement included family medical insurance.  Id. ¶¶ 3-4.[1]  Flagg asserts that an implied term of his employment contract was that Ali-Med would not terminate him wrongfully or without cause if and when a family member developed a serious medical condition that involved considerable medical expense.  Id.  Flagg states that he would not have worked for Ali-Med had he known family medical coverage was an illusion, and would be denied when needed.  Id.  In reliance on this alleged implied term, Flagg did not purchase any other medical insurance for his family.  Id.

   On or about February 4, 2008, Flagg was terminated from his employment with Ali-Med after eighteen years and despite good

---

[1] It is estimated that approximately two-thirds of America's non-elderly population (161,700,000 people) were covered by employment-based health insurance in 2006.  William Pierron & Paul Fronstin, ERISA Pre-emption: Implications for Health Reform and Coverage, 314 Emp. Benefit Res. Inst. Issue Br. 9-10 (February 2008).  Indeed, as of 2003, "[a]bout fifty million private-sector employees, including a majority of year-round, full-time workers, participate[d] in a retirement plan regulated by ERISA."  James A. Wooten, The Employee Retirement Income Security Act of 1974: A Political History 2 (2004).

reviews.  Id. ¶ 3.  As a consequence of termination, Flagg's family medical insurance terminated immediately.  Id. ¶ 18.

The stated reason for the termination was Flagg's alleged failure to punch out certain days when he left work briefly to pick up his daughter from school (because his wife is seriously ill), or at the end of the day when Flagg left work for home. Id. ¶ 5.  In other words, Flagg was accused of claiming work hours and being paid for time that he had not actually worked. Flagg alleges that the real reason his employment was terminated was because his wife, Lisa Flagg, was disabled with a "very expensive medical situation," and Ali-Med and its health plan were responsible for the medical bills and costs.  Id. ¶ 7.

At a hearing before the Department of Unemployment Assistance, Ali-Med testified that it knew Flagg was not punching out for an extended period of time, had never fired anybody for this kind of behavior, and did not warn Flagg about it.  Id. ¶ 8. The hearing officer found that Flagg's behavior was not conscious or deliberate wrongdoing.  Id. ¶ 17.  According to Flagg, the allegation that he was fraudulently claiming hours worked became known amongst fellow workers and the community at large.  Id. ¶ 19.

B.   Procedural Posture

Flagg's Amended Complaint includes five counts, all claiming state common law or statutory causes of action.  Count I is a

claim for breach of contract due to Ali-Med's wrongful termination of Flagg's employment.  Am. Compl. ¶¶ 22-24.  Count II is a claim for defamation due to Ali-Med's false allegations about Flagg fraudulently claiming hours worked.  Id. ¶¶ 25-27.  Count III alleges "unlawful practices and/or violations of certain statutes all under the jurisdiction of the Massachusetts Commission Against Discrimination, including Massachusetts General Laws chapter 151B."  Id. ¶¶ 28-31.  Count IV is a claim for intentional infliction of emotional distress because Ali-Med's conduct was outrageous and beyond accepted standards.  Id. ¶¶ 32-34.  Count V is a claim for fraud and deceit arising out of false claims by Ali-Med regarding the reasons for Flagg's termination.  Id. ¶¶ 35-37.

On June 14, 2010, Ali-Med filed a Notice of Removal.  Notice of Removal, ECF No. 1.  On June 21, Ali-Med filed a motion to dismiss the Amended Complaint or, in the alternative, to strike portions of the Amended Complaint.  The crux of Ali-Med's argument is that Counts I (breach of contract) and IV (intentional infliction of emotional distress) are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") and that Flagg has not sufficiently pled essential elements of the remaining causes of action in Counts II, III, and V.  Mem. Supp. Mot. Dismiss at 2, ECF No. 2.  Ali-Med also moves to strike all references to the

unemployment hearing from the Amended Complaint on the ground of privilege.  Id.

On July 6, Flagg filed an opposition to Ali-Med's motion to dismiss and a motion to remand the case to state court.

### III. REMOVAL JURISDICTION

A.  Legal Standard

According to the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court.  28 U.S.C. § 1441(a).  One type of case over which the federal district courts have original jurisdiction is one "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

As the Supreme Court has stated,

> [t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented **on the face** of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (emphasis added) (internal citations omitted).  See also Great N. Ry. Co. v. Alexander, 246 U.S. 276, 282 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case.").

5

B. The Parties' Arguments Concerning Removability

In his Motion to Remand, Flagg makes two arguments challenging the removal: (1) removal was not done within the thirty-day period required by 28 U.S.C. § 1446, Mot. Remand at 1-4, ECF No. 8; and (2) the Complaint does not assert any federal claims, id. at 6. Instead of focusing on the timeliness of the removal, this Court directly addresses the basis of the removal.

As master of the Amended Complaint, Flagg chose not to bring any federal claims, only state statutory and common law claims. By not presenting a federal question on the face of the Amended Complaint, Flagg is entitled to "avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, 482 U.S. at 392. In its memorandum of law supporting its motion to dismiss, Ali-Med does not dispute the state law nature of all five of Flagg's causes of action.[2]  Instead, Ali-Med raises a complete preemption argument.  Mem. Opp'n Mot. Remand at 2 ("Flagg's claims were subject to the complete preemption of ERISA."), ECF No. 10.  Specifically, Ali-Med contends that Flagg's state law breach of contract (Count I) and intentional infliction of emotional distress (Count IV) claims are completely preempted by ERISA, causing them to be transformed into federal claims for the purposes of removal jurisdiction, and, as there is no federal

---

[2] To advance its conflict preemption arguments, Ali-Med necessarily and expressly acknowledges the state law nature of Counts I and IV.  See Mem. Supp. Mot. Dismiss at 7-8, 13-14.

remedy provided under ERISA, they must be dismissed.[3]  Id. at 6-8.

   C.   Conflict Versus Complete Preemption

   It is important to distinguish between conflict preemption and complete preemption.  See generally Andrew L. Oringer, A Regulatory Vacuum Leaves Gaping Wounds - Can Common Sense Offer a Better Way to Address the Pain of ERISA Preemption?, 26 Hofstra Lab. & Emp. L.J. 409, 413-16 (2008).  As germane here, conflict preemption does not provide a basis for federal jurisdiction and

---

[3] Under ERISA, "[v]irtually all state law remedies are preempted but very few federal substitutes are provided." Aetna Health Inc. v. Davila, 542 U.S. 200, 222 (2004) (Ginsburg, J., concurring) (quoting DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 456 (3d Cir. 2003) (Becker, J., concurring)).

In a recent article, Peter Stris quoted "[a] now-infamous memorandum written by a disability insurance executive," which neatly illustrates the effect of ERISA preemption:

> [t]he advantages of ERISA [to a litigation defendant] are enormous: state law is preempted by federal law, there are no jury trials, there are no compensatory or punitive damages, relief is usually limited to the amount of benefit in question, and claims administrators may receive a deferential standard of review.  The economic impact . . . from having policies covered by ERISA could be significant.  As an example, [we] identified 12 claim situations where we settled for $7.8 million in the aggregate.  If these 12 cases had been covered by ERISA, our liability would have been between zero and $0.5 million.

Peter K. Stris, ERISA Remedies, Welfare Benefits, and Bad Faith: Losing Sight of the Cathedral, 26 Hofstra Lab. & Emp. L.J. 387, 389 n.14 (2008) (citing Memorandum from Jeff McCall to IDC Mgmt. Group & Glenn Felton (Oct. 2, 1995), available at http://www.erisa-claims.com/library/Provident%20memo.pdf).

complete preemption does.  This is because conflict preemption is a federal defense which, under the well-pleaded complaint rule, cannot give rise to removal jurisdiction.  <u>Metropolitan Life Ins. Co.</u> v. <u>Taylor</u>, 481 U.S. 58, 63 (1987) ("As a defense, [conflict preemption] does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.").  By contrast, complete preemption occurs when a federal statute's "extraordinary pre-emptive power" is so powerful that it can "convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."[4]  <u>Id.</u> at 65.  Under complete preemption, a court will treat a complaint that on its face alleges only a state law claim as one alleging a federal claim, giving rise to federal question jurisdiction.

In the ERISA context, the scope of conflict preemption is not contiguous with the scope of complete preemption - the latter is understandably much narrower.[5]  Conflict preemption under ERISA is governed by section 514(a), which states that subject to certain exceptions, ERISA shall "supersede any and all state laws

---

[4] Under our Constitution, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." <u>Taylor</u>, 481 U.S. at 63-64.

[5] Given its ability to transform state law claims into federal claims, the Supreme Court is "reluctant to find [this] extraordinary pre-emptive power."  <u>Taylor</u>, 481 U.S. at 65.

8

insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). By contrast, only state claims falling within the scope of the civil enforcement provision in section 502(a) of ERISA, 29 U.S.C. § 1132(a), are completely preempted.

In <u>Avco Corp.</u> v. <u>Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers</u>, 390 U.S. 557, 560 (1968), the Supreme Court ruled that section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, triggers complete preemption. <u>Id.</u> at 560. "The necessary ground of decision [in <u>Avco</u>] was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" <u>Franchise Tax Bd. of Cal.</u> v. <u>Constr. Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1, 23 (1983). Relying on the close linguistic parallels between section 301 of the LMRA and section 502(a) of ERISA, as well as the clear congressional intent "to make causes of action **within the scope of the civil enforcement provisions of § 502(a)** removable to federal court," 481 U.S. at 66 (emphasis added), the Supreme Court concluded in <u>Taylor</u> that section 502(a) can convert ordinary state law claims into federal claims for the purposes of the well-pleaded complaint rule. <u>Id.</u> at 67. This conclusion was recently confirmed in <u>Aetna Health Inc.</u> v. <u>Davila</u>, 542 U.S. 200 (2004),

9

where the Supreme Court stated along the same lines that "[s]ince LMRA § 301 converts state causes of action into federal ones for purposes of determining the propriety of removal, so too does ERISA § 502(a)(1)(B)."  Id. at 209 (citation omited).

  D. Whether Flagg's State Law Claims are Completely Preempted

Due to its conflation of complete preemption and conflict preemption, Ali-Med does not address the essential issue of whether Flagg's state law claims fall within the scope of section 502(a).  Ali-Med's conflation of the two categories of preemption also causes it to contend that Flagg's breach of contract[6] and intentional infliction of emotional distress[7] claims are completely preempted and transformed into federal claims simply

---

[6] Ali-Med argues that Count I (breach of contract) is conflict preempted by ERISA inasmuch as it is directly "related to" medical benefits.  Mem. Supp. Mot. Dismiss at 2.  See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990) ("We have no difficulty in concluding that . . . a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desires to avoid contributing to, or paying benefits under, the employee's pension fund – 'relate[s] to' an ERISA-covered plan within the meaning of § 514(a), and is therefore preempted.").

[7] Ali-Med argues that Count IV (intentional infliction of emotional distress) is preempted by ERISA because it is based on the theory that Ali-Med terminated Flagg's employment to avoid paying medical benefits.  Mem. Supp. Mot. Dismiss at 13.  See Andrews-Clarke v. Travelers Ins. Co., 984 F. Supp. 49, 54 n.23 (D. Mass. 1997) ("Plaintiff's claims for . . . negligent and intentional infliction of emotional distress, . . . unabashedly seek relief for the denial of plan benefits, and are therefore preempted.").

"[b]ecause the claim[s] **relate[] to** an employee benefit plan covered by ERISA."  Mem. Opp'n Mot. Remand at 6, 8 (emphasis added).  Even assuming Ali-Med is correct that Counts I and IV are caught by the broad conflict preemption provision in section 514(a) of ERISA, this does not mean they are completely preempted and converted into federal claims.  As the Fourth Circuit stated:

> The fact that a state law claim is [conflict] 'preempted' by ERISA — i.e., that it conflicts with ERISA's exclusive regulation of employee welfare benefit plans — does not, however, provide a basis for removing the claim to federal court.  The only state law claims properly removable to federal court are those that are 'completely preempted' by ERISA's civil enforcement provision, § 502(a).

Sonoco Prods. Co. v. Physicians Health Plan, 338 F.3d 366, 371 (4th Cir. 2003).  See also Andrews-Clarke, 984 F. Supp. at 55 n.24 ("Not every state law claim that is preempted by section 514(a) of ERISA, 29 U.S.C. § 1144(a), is subject to removal to federal court under the complete preemption exception to the well-pleaded complaint rule.") (citing Taylor, 481 U.S. at 63-66).  A separate analysis needs to be conducted to determine if Flagg's state law claims fall within the scope of section 502(a).  As the following discussion shows, they do not.

>    E.   Flagg's State Law Claims Fall Outside the Scope of
>         Section 502(a) of ERISA

Section 502(a) lays out the numerous causes of action arising under ERISA.  29 U.S.C. § 1132(a).  Flagg's state law claims clearly do not fall within the scope of any of these

causes of action.  See 29 U.S.C. § 1132(a)(1)(A) (failure to provide requested information or annual report); § 1132(a)(2) (breach of fiduciary duty); § 1132(a)(3) (equitable[8] relief for violations of ERISA or terms of a plan); § 1132(a)(4) (failure to provide individual plan statement); § 1132(a)(5) (civil action by the Secretary); § 1132(a)(6) (civil penalty by the Secretary); § 1132(a)(7) (civil action by the State); § 1132(a)(8) (benefit plan funding notices); § 1132(a)(9) (purchases of insurance contract or annuity); or § 1132(a)(10) (multiemployer plan certified to be endangered).  Flagg's claims also fall outside the scope of 29 U.S.C. § 1132(a)(1)(B) because he is not seeking "to recover [healthcare] benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan."  As Flagg states in the Amended Complaint, his family medical insurance coterminated with his employment, and he no longer has rights under any ERISA plan.  See also Mot. Remand at 4 ("Flagg is not claiming benefits were wrongfully not paid by plan administrator or that claims or benefits were improperly processed.").

---

[8] Flagg only seeks monetary damages and not injunctions or other equitable relief.  Am. Compl. ¶¶ 24, 27, 31, 34, 37.  It is well settled, however, that claims for compensatory or consequential damages do not fall under the purview of "other appropriate equitable relief" available to an ERISA plan participant or beneficiary under 29 U.S.C. 1132(a)(3).  See Mertens v. Hewitt Assocs., 508 U.S. 248, 255, 261 (1993).

12

The only ERISA provision that appears to cover Flagg's wrongful termination and breach of contract claim (Count I) is section 510, 29 U.S.C. § 1140.  Section 510 of ERISA is an anti-retaliation provision which makes it "unlawful for any person to **discharge**, fine, suspend, **expel**, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."  29 U.S.C. § 1140 (emphasis added).  The crux of Flagg's breach of contract claim is that he was wrongfully terminated because he sought to exercise rights of medical reimbursement under the family health plan.  Yet, section 510 alone cannot transform a state claim to a federal claim - only section 502(a) has this "extraordinary pre-emptive power."  Taylor, 481 U.S. at 65.

In oral argument, Ali-Med's counsel attempted to draw parallels between this case and an earlier decision of this Court, Andrews-Clarke v. Travelers Ins. Co., 984 F. Supp. 49 (D. Mass. 1997).  In that case, an ERISA plan participant brought various state law claims[9] and federal claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, against a health insurer in state court.  The action was

---

[9] The state claims were for breach of contract, medical malpractice, wrongful death, loss of parental and spousal consortium, intentional and negligent infliction of emotional distress, and violations of the Massachusetts consumer protection laws. Andrews-Clarke, 984 F. Supp. at 52.

removed to this Court, which ruled that the participant's state law claims were **conflict** preempted by section 514(a) of ERISA. Id. at 54-55.  In Andrews-Clarke, the jurisdictional effect of complete preemption was not at issue because at the time of removal, the plaintiff's complaint asserted federal claims under EMTALA so "there [wa]s no question as to the propriety of the Defendants' removal to this Court pursuant to 28 U.S.C. § 1441." Id. at 55 n.24.  Nevertheless, this Court mentioned in passing that under ERISA, the scope of complete and conflict preemption are different, id., and that even if the plaintiff had never asserted the federal EMTALA claims, "removal to this Court would have been justified on the basis of the **complete preemption** doctrine" because "all of her common law claims . . . fall squarely within the scope of ERISA's civil enforcement provision, section 502(a), 29 U.S.C. § 1132(a)(1)(B), and thus are subject to complete preemption."  Id. (emphasis added).  In the present case, this Court is presented with an opportunity to apply the complete preemption doctrine it described in Andrews-Clarke, and concludes that Flagg's state law claims do not fall within the scope of section 502(a) and thus are not subject to complete preemption.

## IV. CONCLUSION

As the master of its Amended Complaint, Flagg chose not to present any federal claims.  Further, Flagg's state law claims

14

fall outside the scope of section 502(a) of ERISA and are therefore not transformed into federal claims by that section's "extraordinary pre-emptive power." Accordingly, this Court lacks removal jurisdiction over the present case. Flagg's Motion to Remand [ECF No. 8] is **GRANTED.** The case is hereby remanded to the Superior Court of the Commonwealth of Massachusetts sitting in and for the County of Norfolk. The Court takes no action on, nor does it express any opinion concerning, Ali-Med's Motion to Dismiss [ECF No. 3].

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE